

www.millerlaw.nyc

Meredith R. Miller, Esq.

Miller Law, PLLC
167 Madison Avenue, Suite 503
New York, NY 10016

**Tel:** (347) 878-2587
**Fax:** (866) 495-6719
meredith@millerlaw.nyc

November 1, 2018

**By ECF and Email (Failla_NYSDChambers@nysd.uscourts.gov)**

The Honorable Katherine Failla
United States District Court for the
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

    Re:    *Mercedes v. Claremont Properties LLC, et al.*
              **Docket No. 18-cv-1268 (KPF)**

Dear Judge Failla:

    With the Rapaport Law Firm, we are co-counsel to plaintiff David Mercedes ("Plaintiff") in the above-referenced matter. Plaintiff writes jointly with Claremont Properties, LLC, Coutinho Properties, LLC, J&M Coutinho, LLC, Charles Coutinho, LLC, Javind 95th Street Apartments LLC, Javind Apartment LLC, Total Renovation & Management, Inc., 350 East 51st Street, LLC, Charles Coutinho and Joe D. Coutinho (collectively, "Defendants") to request that the Court approve the Settlement Agreement (the "Agreement"), which is submitted simultaneously with this letter as Exhibit 1. Plaintiff's counsel further requests that the Court approve Plaintiff's attorney fees and costs.

    The parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel. After an initial exchange of information, including the production of time and payroll records for Plaintiff, and after careful analysis of those records by both parties, the terms of the Agreement were negotiated extensively by counsel.

    This action raises issues that substantially overlap with those raised by Defendants' former employees in a related action, *Flores, et al v. Claremont Properties, LLC, et al.* (17-cv-01316 (KBF)). The parties in *Flores*, represented by the same counsel, were able to resolve the matter in a private mediation. Given counsels' familiarity with the issues and the experience at the previous settlement negotiations, we were able to resolve this matter efficiently and fairly.

    **I.**    **Introduction.**

    In a Complaint filed on February 13, 2018, Plaintiff asserts wage and other related claims arising from maintenance work he performed at various of Defendants' buildings in New York City and Westchester. Plaintiff alleges Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") violations and seeks: (1) unpaid overtime; (2) repayment of illegal deductions (NYLL, Article 19, § 193, 12 N.Y.C.R.R. § 2.10(a)); (3) penalties for wage statement

violations pursuant to NYLL § 195(3) and/or 198(1-b); (4) spread of hours; (5) liquidated damages; and (6) attorneys' fees and costs.

Given that Plaintiff's claims arise, in part, under the FLSA, the Agreements must be approved by this Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012) (citations and quotation marks omitted).

**II. Plaintiff's Claims.**

Plaintiff alleges that he was employed by Defendants as a "porter" from approximately September 2015 through November 2017. Plaintiff alleges that, initially, Defendants hired him to handle renovation-related work. This work involved remodeling and painting hallways. Later, he worked on a variety of projects, including, *inter alia*, applying liquid coatings to roofs, painting fire escapes, and assisting with apartment turn-overs for apartments that had been vacated by tenants. Plaintiff alleges that, in or about January 2016, he began performing both renovation/maintenance projects at buildings located throughout upper Manhattan, as well as routine porter responsibilities (including, *inter alia*, cleaning, snow removal and handling garbage and recycling) at approximately four buildings. Ultimately, during the course of his employment, Plaintiff alleges that he performed work in connection with renovation/maintenance projects at approximately twelve (12) of Defendants' buildings.

Plaintiff alleges that Defendants did not provide timesheets and his hours worked were underreported and, therefore, some of his overtime hours were not compensated. Further, Plaintiff alleges that, when he was paid for overtime hours, Defendants paid Plaintiff at his regular hourly rate rather than 1.5 times his regular rate of pay.

Plaintiff additionally alleges that Defendants violated NYLL by requiring him to provide his own "tools of the trade," including mandatory cell phones and work tools, without reimbursement. Through discovery, there appears to be some uncertainty about whether some or all of these expenses were reimbursed. The settlement reflects Plaintiff's determination that establishing these wage theft clams would be challenging and the amount of damages difficult to establish.

**III. Summary of Alleged Damages and Defenses.**

After reviewing the records provided by Defendants, and based on Plaintiff's own recollection, counsel initially calculated that, if Plaintiff succeeded in proving that he worked all of the overtime hours he claims, Plaintiff could have recovered approximately $19,932.50 for unpaid overtime and spread of hours pay, not including liquidated damages. This was an

approximation, and not based on a detailed week-by-week analysis, even though Plaintiff's hours varied significantly over the course of his employment.

Rather, the estimated calculation of all unpaid overtime was based on Plaintiff's approximate work hours and pay for November 2015, then extrapolated and applied to all 25 months that he worked for Defendants. Plaintiff alleges that he worked Monday through Friday 7:30am to 6:30pm and Saturdays from 7:30am to 5:00pm, for a total of approximately 58.5 hours per week (i.e., 18.5 hours of overtime per week), which is about 74 overtime hours each month. Plaintiff alleges that he was only paid for about 46 overtime hours per month, and these hours were compensated at his regular rate of $9.38 per hour (rather than the premium hourly rate required for work over 40 hours per week).

Accordingly, per month, Plaintiff alleges that Defendants failed to pay any compensation at all for 28 hours of work and failed to pay the premium overtime rate for 46 hours of overtime. If it is assumed that Plaintiff's regular rate of pay was $9.38 per hour and his premium overtime rate (1.5) was $14.07, Plaintiff alleges that Defendants unlawfully failed to pay Plaintiff: (a) $393.96 for twenty-eight 28 overtime hours for which he received no pay ($14.07 x 28); plus (b) $215.74 for forty-six 46 hours of overtime that Defendants unlawfully compensated Plaintiff at his regular hourly rate ($4.69 x 46). Therefore, for each month, Plaintiff estimates that Defendants owe him $609.70, as well as spread of hours pay of approximately $187.60 ($9.38x5x4), for a total of $797.30. Which amounts to an estimated $19,932.50 in overtime and spread of hours over a period of 25 months. With liquidated damages (x2), this amount is $39,865.00.

Plaintiff added a failure to provide wage notices ($5,000.00) and costs and attorneys to the unpaid overtime and spread of hours and initially demanded $55,000.00

After Plaintiff's counsel presented this initial damages estimate to Defendants' counsel, the parties engaged in communications intended to foster common ground about basic issues, such as the extent to which *any* of the remuneration provided by Defendants to Plaintiff was in payment for hours worked beyond the first forty hours per workweek. As a result of this give and take, the parties reached a compromise settlement of $25,000.00, which includes all of Plaintiff's estimated unpaid overtime and spread of hours, as well as his wage notice claim.

This settlement is the product of a *bona fide* dispute. Defendants maintain that Plaintiff overstates his claimed hours worked throughout his employment. Defendants believe their records show that Defendants kept track of and paid Plaintiff for all hours reported as worked. Defendants believe that these records and credible testimony of Mr. Coutinho and others with knowledge of the buildings and the duties required of Plaintiff would support their defense that Plaintiff was paid for reported hours and Plaintiff's claims are, therefore, overvalued. At the very most, Defendants argue that Plaintiff is entitled to ½ time because he was paid for overtime but may not have been paid time and ½. Defendants deny wage violations but contend that any such violations would not warrant liquidated damages because they believed in good faith that they were in compliance with the law.

It became apparent that further clarity concerning Plaintiff's hours and wages would necessitate costly depositions of all parties, and it was far from clear that results of such proceedings would be beneficial to either of the parties, which encouraged the settlement.

### IV. The Agreement is Fair and Reasonable.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute, and the Agreement is the product of extensive and challenging negotiations.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $25,000.00, to be paid in full within 10 days of Court approval.

We believe that the settlement amount is fair and reasonable in light of the uncertainties associated with establishing Plaintiff's precise amount of overtime hours. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)").

Here, the parties were able to reach an agreement before incurring the costs of depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

### V. Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky*, 900 F. Supp. 2d at 336.

The settlement provides Plaintiff's attorneys with reimbursement of costs totaling $543.15 and attorneys' fees in the amount of $6,906.85. Plaintiff's counsel seeks approval of these fees, which represent approximately 28.2% of the net total settlement amount of $24,456.85, i.e., after reimbursement of $543.15 in costs. Plaintiff's counsel represents Plaintiff on a contingent basis, pursuant to a retainer agreement, which provides for attorneys' fees of one-third of the net recovery. A copy of the retainer agreement is attached hereto as Exhibit 2. Given the early settlement, Plaintiff's counsel has significantly discounted the fee from the agreed 33.33% to 28.2%, even though contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *In Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).

Co-counsel Rapaport Law Firm's time spent on this matter and the expenses reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached hereto as Exhibit 3. Exhibit 4 is the history bill of Miller Law, PLLC. The lodestar in this case (not including costs and disbursements) is $11,993.00, which is more than the fees of $6,906.85 requested herein. The lodestar reflects a billing rate of $400/hr for Meredith R. Miller of Miller Law, PLLC and of counsel to Rapaport Law Firm, PLLC; $400/hr for Marc Rapaport, the managing member of Rapaport Law Firm PLLC; $115 p/hr for Marcela Cabezas and $95/hr for Ana Alcantara and Karina Gulfo, paralegals at Rapaport Law Firm, PLLC. These rates have been held to be reasonable in the Southern District of New York. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011)(collecting cases on reasonable hourly rates).

The attorneys and staff who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport (Rapaport Law Firm, PLLC).**

Marc Rapaport is the managing member of Rapaport Law Firm, where he began his practice in 1995. He has more than twenty years of experience litigating employment matters on behalf of employees in New York. He received a J.D. from Georgetown University Law Center in 1992. Thereafter, he worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. He represents employees in a broad range of discrimination and wage/hour matters. He is an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. He believes that his clients also benefit from his broader experience beyond the field of employment law, including his experience litigating commercial disputes in state and federal courts.

For more than 20 years, Mr. Rapaport has endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, he has particularly focused on representing immigrant workers in wage cases, by way of example, the following matters: Armas et al. v. SKYC Management LLC et al., 2014 CV 6360 (PGG)(HBP); Castillo et al. v.140 Ash Associates, LLC, et al., 16-cv-5216 (FB)(PK); Salas et al. v. Phoenix ACV Construction Services, LLC et al., 16-cv-08066 (LAP); Flores et al. v. Claremont Properties, 17-cv001316 (KBF); and Montalvo, et al. v Arkar, et al., 17-cv-06693 (AJN). His requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

2. **Meredith R. Miller (Miller Law, PLLC; of counsel to Rapaport Law Firm, PLLC).**

Meredith R. Miller has served as Of Counsel to Rapaport Law Firm for more than twelve years. She received a J.D. from Brooklyn Law School in 2000. Thereafter, she started her legal career in Albany, clerking for the New York Court of Appeals. She then served as a litigation associate at Proskauer Rose, LLP in New York City. In 2004, she accepted a teaching fellowship at Temple Law School in Philadelphia, which began her career as a law professor. Ms. Miller teaches contract, business and employment law at the Touro College, Jacob D. Fuchsberg Law Center in Long Island, New York. She has written and lectured extensively on

these subjects. Additionally, she has served as co-counsel with Mr. Rapaport on over a dozen wage cases representing immigrant workers. Her requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

3. **Marcela Cabezas (Rapaport Law Firm, PLLC).**

Marcela Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment cases, Ms. Cabezas plays a crucial and effective role in the firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for the firm's Spanish-speaking clients.

4. **Ana Alcantara (Rapaport Law Firm, PLLC).**

Until earlier this year, Ana Alcantara was a paralegal at Rapaport Law Firm. Ms. Alcantara graduated from SUNY Plattsburgh with a B.S. Ms. Alcantara speaks fluent Spanish. Because of her language skills, Ms. Alcantara served an integral role in representation of wage and hour plaintiffs.

5. **Karina Gulfo (Rapaport Law Firm, PLLC)**

Karina Gulfo joined Rapaport Law Firm, PLLC as a paralegal in August 2018. Ms. Gulfo is fluent in Spanish, a skill which is essential to our effective representation of immigrant workers. Previously, Ms. Gulfo was a paralegal for more than three years at a litigation law firm where she similarly had significant responsibilities involving communications with immigrant clients. Ms. Gulfo is also an undergraduate student at CUNY (John Jay College of Criminal Justice).

***

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. The parties thank the Court for its attention to this matter.

Respectfully yours,

Meredith R. Miller

Encls. (Exhibs 1 – 4)

cc: Matthew Persanis, Esq. (Via ECF only)